**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED

August 04, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Nik Sams
DEPUTY CLERK

|  |  |  |
|---|---|---|
| **PRO-LIFT DOORS FRANCHISE, LLC,** | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No. __3:26cv82_____ |
| | ) | |
| v. | ) | |
| | ) | |
| **SEAC DUMLER HOLDINGS LLC,** | ) | |
| | ) | |
| Serve: Jonathon Drew Dumler, Registered Agent | ) | |
| 4114 Commonwealth Avenue | ) | |
| Charlotte, North Carolina 28205-7214 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JONATHON DREW DUMLER,** | ) | |
| | ) | |
| Serve: Jonathon Drew Dumler | ) | |
| 4114 Commonwealth Avenue | ) | |
| Charlotte, North Carolina 28205-7214 | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| | ) | |

**COMPLAINT**

Plaintiff Pro-Lift Doors Franchise, LLC ("*Pro-Lift*") appears by counsel and brings this Complaint against Defendants SEAC Dumler Holdings LLC ("*SEAC*") and Jonathon Drew Dumler ("*Mr. Dumler*") (together, the *Defendants*). In support thereof, Pro-Lift states as follows:

**NATURE OF THE ACTION**

1.    Pro-Lift seeks enforcement of the franchise agreement executed by Pro-Lift, SEAC, and Mr. Dumler on or about December 31, 2022, as amended (the "*Franchise Agreement*"),[1] and of the personal covenants and guaranty executed by Mr. Dumler. Defendants purported to

---

[1] A true and accurate copy of the Franchise Agreement, together with the First Amendment thereto and its exhibits (including the Personal Covenants and the Guaranty Ageement), is attached as Exhibit A.

1

unilaterally terminate the Franchise Agreement without any contractual right to do so, ceased reporting gross sales and paying royalties and other fees, and, while still holding the franchised business out to the public as an authorized Pro-Lift outlet, launched a competing garage-door business in and around their franchised territory in violation of their covenants not to compete and of federal and state law protecting Pro-Lift's trademarks and goodwill.

## PARTIES

2.      Plaintiff Pro-Lift Doors Franchise, LLC is a Delaware limited liability company authorized to transact business in the Commonwealth of Virginia with its principal place of business in Charlottesville, Virginia. Pro-Lift franchises its established business system for garage door installation, maintenance, and repair services for residences and light commercial buildings, to include equipment, tools, materials, methods, procedures, quality standards, client lists, leads, and service marks, to a national network of franchisees operating under the Pro-Lift Doors brand.

3.      Defendant SEAC Dumler Holdings LLC is a North Carolina limited liability company owned and operated by Mr. Dumler, who serves as its managing member and registered agent. SEAC maintains its registered office at 4114 Commonwealth Avenue, Charlotte, North Carolina 28205-7214. SEAC entered into the Franchise Agreement with Pro-Lift to license Pro-Lift's garage door business system for a protected territory in the Charlotte, North Carolina market (the "*Protected Territory*"), as defined in Section 2.1 of the Franchise Agreement.

4.      Defendant Jonathon Drew Dumler is an individual residing at 4114 Commonwealth Avenue, Charlotte, North Carolina 28205-7214. Mr. Dumler owns the issued and outstanding membership interest in SEAC and operated the franchised business. Mr. Dumler executed the Franchise Agreement's personal covenants and executed the Guaranty Agreement (the "*Guaranty*") in his personal capacity as guarantor of SEAC's obligations.

2

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs, and there is complete diversity of citizenship between Pro-Lift and Defendants. Pro-Lift is a Delaware limited liability company with its principal place of business in Charlottesville, Virginia, and no direct or indirect member of Pro-Lift is a citizen of North Carolina. SEAC is a North Carolina limited liability company whose sole member, Mr. Dumler, is a citizen of North Carolina, where he resides and is domiciled.

6.      This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises in part under the Trademark Act of 1946 (the Lanham Act), 15 U.S.C. § 1051 *et seq.*, including 15 U.S.C. § 1125(a).

7.      This Court has supplemental jurisdiction over Pro-Lift's state law claims under 28 U.S.C. § 1367(a) because those claims are so related to the claims in this action over which the Court has original jurisdiction that the claims are part of the same case or controversy.

8.      Venue is proper in this Court, and the Court has personal jurisdiction over SEAC and Mr. Dumler, because each Defendant consented to this Court's jurisdiction and to venue in this Court. Section 27.2 of the Franchise Agreement provides:

> **Consent to Jurisdiction and Venue for Disputes.** Any action brought by either party shall be brought in the appropriate state or federal court located in or serving county and state in which Franchisor maintains its principal place of business at the time any dispute resolution proceeding is commenced by either party (currently the City of Charlottesville, VA). The parties waive all questions of personal jurisdiction or venue for the purposes of carrying out this provision. … This exclusive choice of jurisdiction and venue provision shall not restrict the ability of the parties to confirm or enforce judgments in any appropriate jurisdiction. This Agreement was executed and accepted at Franchisor's current place of business in the City of Charlottesville, VA.[2]

---

[2] Ex. A § 27.2.

9.      Pro-Lift maintains its principal place of business in Charlottesville, Virginia, which is located within this District and Division.

10.      Mr. Dumler expressly assumed personal covenants as consideration under the Franchise Agreement, by which he became bound by "all of the obligations and covenants of Franchisee contained in Sections 18.1, 18.2, 18.3, 18.7 and 27.1 – 27.7 as if such obligations and covenants were made and given personally by you directly to Franchisor." These sections establish covenants not to compete, not to solicit, not to disclose trade secrets and confidential information of the Franchisor, and the dispute resolution mechanisms of the Franchise Agreement, including the consent to jurisdiction and venue quoted above.

11.      Independently, the Guaranty executed by Mr. Dumler provides a separate basis for jurisdiction and venue in this Court:

> Any litigation initiated under this Guaranty shall be instituted exclusively at Franchisor's discretion in the most immediate state judicial district and court encompassing Franchisor's headquarters and having subject matter jurisdiction thereof or the United States District Court encompassing Franchisor's headquarters. Each of the undersigned expressly agrees that the undersigned is subject to the jurisdiction and venue of those courts for purposes of such litigation. Each of the undersigned hereby waive and covenant never to assert any claim that the undersigned is not subject to personal jurisdiction in those courts or that venue in those courts is for any reason improper, inconvenient, prejudicial or otherwise inappropriate (including, without limitation, any claim under the judicial doctrine of forum non conveniens).[3]

12.      Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims, including the harm to Pro-Lift's franchise system, brand, and headquarters operations, occurred in this District.

---

[3] Ex. A, Guaranty Agreement.

## FACTUAL BACKGROUND

13.     Pursuant to the Franchise Agreement, Pro-Lift licensed to Defendants its business system for garage door repair and installation, including associated services and intellectual and intangible property, together with the right to use Pro-Lift's trade names, trademarks, and service marks, including "Pro-Lift Doors" and "ProLift Garage Doors" (the "*Marks*"), in exchange for, among other things, payment of royalties, Marketing Fund contributions, contact center fees, and technology fees, and reporting of gross sales. Under Section 3.1 of the Franchise Agreement, Defendants agreed to an initial term of ten (10) years, running through December 31, 2032. Section 2.1 defines the Protected Territory in which Defendants were licensed to operate the franchised business.

14.     Section 18.1(i) of the Franchise Agreement provides that during the term of the Agreement, the franchisee and its members and managers (each a "*Bound Party*") will not, directly or indirectly, (a) have any direct or indirect interest as a disclosed or beneficial owner in a "Competitive Business," or (b) perform services as a director, officer, manager, employee, consultant, representative, agent, or otherwise for a Competitive Business located within the Protected Territory, within a radius of twenty (20) miles of the Protected Territory or of any other ProLift Garage Doors Business (including any such business in development that has been assigned a protected territory), within the United States, or anywhere in the world. Section 18.1(iii) defines a "Competitive Business" as any business operating, or granting franchises or licenses to others to operate, in any business which offers or sells garage door installation, maintenance, and repair services.[4]

---

[4] Ex. A § 18.1(i), (iii).

15.     Section 18.1(ii) of the Franchise Agreement further provides that, for two years following the effective date of termination or expiration of the Agreement for any reason, the franchisee and the Bound Parties will not, directly or indirectly, own any interest in or perform services for a Competitive Business located or operating within the Protected Territory, within a radius of twenty (20) miles of the Protected Territory, or within twenty (20) miles of the primary office of any other ProLift Garage Doors Business or such business in development that has been assigned a protected territory. Section 18.1 further provides that its restrictions are tolled during any default and apply for the greater of two years from termination or two years from the entry of an order restraining the Bound Party from violating Section 18.1.[5]

16.     In Section 18.1(iv) of the Franchise Agreement, the parties acknowledged the difficulty of ascertaining monetary damages and the irreparable harm that would result from breach of the covenants not to compete and agreed that in the event of an actual or threatened breach, Pro-Lift "shall be entitled to an injunction, without bond," restraining the breach.[6]

17.     Section 20.1 of the Franchise Agreement imposes obligations on the franchisee upon any expiration or earlier termination of the Agreement, whether by reason of lapse of time, default in performance, or other cause or contingency, including to: immediately cease operating within the Protected Territory and cease all use of the Marks; refrain from holding itself out as a present or former franchisee; de-identify vehicles; refrain from operating in any manner that may give the general public the impression that the Franchise Agreement is still in force; and pay all sums owing to Franchisor, including damages, costs, and reasonable attorneys' fees incurred by Franchisor in obtaining injunctive or other relief for the enforcement of the Agreement.[7]

---

[5] Ex. A § 18.1(ii).
[6] Ex. A § 18.1(iv).
[7] Ex. A § 20.1(ii)–(v).

6

18.    Under the Guaranty, Mr. Dumler personally, absolutely, and unconditionally guaranteed that SEAC would punctually pay and perform each and every undertaking, condition, and covenant set forth in the Franchise Agreement.

19.    By letter from their counsel dated October 16, 2025, and transmitted on or about October 20, 2025 (the "*Purported Termination Notice*"),[8] Defendants asserted that Pro-Lift had materially breached the Franchise Agreement and purported to terminate the Franchise Agreement, effective immediately, pursuant to its Section 19.1. The Purported Termination Notice disclaimed "any and all further obligation to pay royalties, fees, or post-termination restrictions." In subsequent correspondence, Defendants' counsel asserted that the Franchise Agreement "was terminated by the Franchisee, effective October 27, 2025, due to PSB's uncured material breaches."

20.    The Franchise Agreement grants the franchisee no right of unilateral termination on these facts. Section 19.1 permits termination by the franchisee only after Pro-Lift receives written notice of an alleged material breach, delivered in accordance with Section 26 of the Franchise Agreement, and fails to cure within ninety (90) days.[9] Defendants never delivered a compliant written notice of any alleged material breach, no cure period ever commenced, and Pro-Lift committed no material breach. Defendants' asserted grounds were baseless. Moreover, even where a franchisee validly terminates under Section 19.1, Section 19.1(ii) provides that all post-termination obligations "shall not be waived but shall be strictly adhered to," including payment of all outstanding Royalties and other fees and compliance with the post-termination covenant not to compete.

---

[8] A true and accurate copy of the Purported Termination Notice is attached as Exhibit B.
[9] Ex. A §§ 19.1, 26.

21.    By letter dated November 14, 2025,[10] Pro-Lift rejected the purported termination as ineffective and unauthorized, notified Defendants that their unilateral closure and abandonment of the franchised business was itself a material breach of the Franchise Agreement, demanded written confirmation within five (5) days that Defendants would resume full performance, and reserved all rights and remedies. Defendants did not resume performance. The Franchise Agreement therefore remains in full force and effect, and Defendants' obligations to report Gross Sales and to pay royalties and fees have continued to accrue.

22.    Since on or about October 20, 2025, Defendants have ceased reporting gross sales to Pro-Lift and have ceased paying royalties, Marketing Fund contributions, contact center fees, and technology fees.

23.    Through at least April and May 2026, customers continued to post reviews on the Thumbtack listing for "ProLift Garage Doors – Central Charlotte" reflecting garage-door services recently performed by Defendants under the Pro-Lift name.[11]

24.    On information and belief, in or about 2026, Defendants launched and now operate a competing garage-door business under the name "Liberty Overhead Door Company" ("*Liberty Overhead*") in and around the Protected Territory, advertising through Yelp, Instagram, and other channels.

25.    As of July 2026, Mr. Dumler continued to drive a Pro-Lift-branded vehicle in the Charlotte market, as reported to Pro-Lift's leadership by another Pro-Lift franchisee in the Charlotte market.

---

[10] A true and accurate copy of Pro-Lift's November 14, 2025 response is attached as Exhibit C.
[11] Screenshots and listings collected by Premium Service Brands are attached collectively as Exhibit D, including the Thumbtack listing and reviews for "ProLift Garage Doors – Central Charlotte" (Apr.–May 2026), the Yelp and Instagram (@libertyoverheaddoor_clt) pages for Liberty Overhead Door Company, and the Google Business listing.

26.    On information and belief, Defendants or persons acting at their direction caused the Google Business listing for the franchised Pro-Lift outlet to be marked closed, while simultaneously diverting garage-door customers in the Protected Territory to Liberty Overhead.

27.    Defendants' simultaneous operation of a competing business and continued use of the Marks and Pro-Lift identity is likely to cause, and on information and belief has caused, confusion, mistake, and deception among customers in the Charlotte market as to the origin, sponsorship, and affiliation of Defendants' services.

28.    Defendants' conduct has damaged Pro-Lift through unpaid royalties and fees, lost franchise system revenue, diversion of customers, and injury to Pro-Lift's brand, reputation, and goodwill, and threatens Pro-Lift with continuing irreparable harm for which there is no adequate remedy at law.

## <u>COUNT I — BREACH OF THE FRANCHISE AGREEMENT</u>

*(Against All Defendants)*

29.    All previous paragraphs are re-alleged and incorporated herein by reference.

30.    The Franchise Agreement is a valid and enforceable contract. Pro-Lift has performed all its obligations under the Franchise Agreement, and Defendants accepted Pro-Lift's performance without lawful objection prior to their breach.

31.    Defendants materially breached the Franchise Agreement by, among other things: purporting to unilaterally terminate the Franchise Agreement without any contractual right to do so and abandoning the franchised business; failing to report gross sales and to pay royalties, Marketing Fund contributions, contact center fees, and technology fees when due; owning and operating a Competitive Business in violation of Section 18.1(i); and, in the alternative, to the extent Defendants' purported termination were given effect, violating the post-termination covenants of Section 18.1(ii) and the post-termination obligations of Section 20.1, including by

9

continuing to use the Marks, holding the business out as a Pro-Lift outlet, failing to de-identify vehicles, and operating a Competitive Business within the Protected Territory and its twenty-mile radius within two years of termination.

32.     As a direct and proximate result of Defendants' breaches, Pro-Lift has suffered damages in the amount of $197,200, comprising the minimum royalties of $600 per month ($51,000), contact center fees of $880 per month ($74,800), and technology fees of $840 per month ($71,400) that would accrue over the eighty-five (85) months remaining in the initial term of the Franchise Agreement as of November 2025,[12] recoverable as lost profits under Section 27.4 of the Franchise Agreement, plus royalties due on Defendants' unreported gross sales, contractual interest under Section 5.3 of the Franchise Agreement, and Pro-Lift's reasonable attorneys' fees and costs as provided by Sections 20.1(iii)–(iv) and 28 of the Franchise Agreement.

## COUNT II — BREACH OF THE GUARANTY

*(Against Mr. Dumler)*

33.     All previous paragraphs are re-alleged and incorporated herein by reference.

34.     Under the Guaranty, Mr. Dumler personally, absolutely, and unconditionally guaranteed SEAC's punctual payment and performance of each undertaking, condition, and covenant in the Franchise Agreement.

35.     Under the Guaranty, Mr. Dumler further agreed that upon notice from Pro-Lift that SEAC had failed to pay monies due and owing under the Franchise Agreement, he would cure the monetary default within five business days of such notice.

36.     SEAC has failed to pay and perform its obligations under the Franchise Agreement as set forth above, and Mr. Dumler has failed to pay and perform those obligations upon SEAC's

---

[12] Ex. C at 4.

default, including after Pro-Lift's November 14, 2025, letter provided notice of SEAC's monetary defaults.

37.    Mr. Dumler is therefore personally liable for all amounts owed by SEAC under the Franchise Agreement, together with Pro-Lift's costs and expenses of this proceeding, including its reasonable attorneys' fees, as provided in the Guaranty.

## COUNT III — TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION, 15 U.S.C. §§ 1114, 1125(a)

*(Against All Defendants)*

38.    All previous paragraphs are re-alleged and incorporated herein by reference.

39.    Pro-Lift owns and licenses the Marks, which are distinctive, have been continuously used in commerce in connection with garage-door installation, maintenance, and repair services, and embody substantial goodwill belonging to Pro-Lift.

40.    The Marks include the PROLIFT GARAGE DOORS service mark, which is registered to Pro-Lift on the Principal Register of the United States Patent and Trademark Office, Registration No. 4,972,430, registered June 7, 2016, for the installation, maintenance, and repair of garage doors. The registration is in full force and effect and has become incontestable pursuant to 15 U.S.C. § 1065.

41.    Following their purported termination of the Franchise Agreement, Defendants' use of the Marks and of the Pro-Lift identity in commerce, including answering customer calls as Pro-Lift, performing services under the ProLift Garage Doors name, and operating Pro-Lift-branded vehicles, was and is without Pro-Lift's authorization.

42.    Defendants' use in commerce of the registered PROLIFT GARAGE DOORS mark, and of reproductions and colorable imitations of it, in connection with the sale, offering for sale, and advertising of garage-door services, is likely to cause confusion, mistake, and deception, in

11

violation of 15 U.S.C. § 1114(1). Defendants' conduct further constitutes a false designation of origin and a false or misleading representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Pro-Lift, or as to the origin, sponsorship, or approval of Defendants' services by Pro-Lift, in violation of 15 U.S.C. § 1125(a).

43.    Defendants' conduct was and is willful, in bad faith, and undertaken with knowledge that Defendants had repudiated the Franchise Agreement and claimed to be free of it.

44.    Pro-Lift has been damaged by Defendants' conduct and, pursuant to 15 U.S.C. § 1117(a), is entitled to Defendants' profits, its own damages, and the costs of the action, and, this being an exceptional case, its reasonable attorneys' fees. Pro-Lift is further entitled to injunctive relief under 15 U.S.C. § 1116.

## COUNT IV — COMMON-LAW UNFAIR COMPETITION

### *(Against All Defendants)*

45.    All previous paragraphs are re-alleged and incorporated herein by reference.

46.    By simultaneously trading on the Pro-Lift name and goodwill while operating and diverting customers to a competing business, Defendants have engaged in unfair competition under the common law of Virginia.

47.    Defendants' unfair competition has proximately caused damage to Pro-Lift, including diversion of customers and revenues and injury to goodwill, and will continue to do so unless enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Pro-Lift Doors Franchise, LLC respectfully requests that the Court:

a.     Enter judgment in favor of Pro-Lift and against Defendants, jointly and severally, on all Counts;

b.     Award Pro-Lift compensatory damages in the amount of $197,200, together with royalties due on Defendants' unreported gross sales, contractual interest under Section 5.3 of the Franchise Agreement, and prejudgment interest under Virginia Code § 8.01-382;

c.     Preliminarily and permanently enjoin Defendants, and all persons acting in concert with them, from using the Marks or otherwise holding themselves out as affiliated with Pro-Lift, and from owning or operating a Competitive Business within the Protected Territory or within twenty miles thereof for the period required by Section 18.1 of the Franchise Agreement, without bond, pursuant to Section 18.1(iv) of the Franchise Agreement and 15 U.S.C. § 1116;

d.     Order Defendants to comply with their post-termination obligations under Section 20.1 of the Franchise Agreement, including de-identification of all vehicles and cessation of every use of the Marks;

e.     Award Pro-Lift Defendants' profits and Pro-Lift's damages under 15 U.S.C. § 1117(a), and its reasonable attorneys' fees under Section 28 of the Franchise Agreement, the Guaranty, and 15 U.S.C. § 1117(a);

f.     Award Pro-Lift its costs of suit; and

g.     Grant such other and further relief as the Court deems just and proper.

13

Dated: August 4, 2026

Respectfully submitted,

**PRO-LIFT DOORS FRANCHISE, LLC**

*By Counsel*

/s/ Evan D. Mayo
Evan D. Mayo (VSB No. 89383)
MAYO LAW GROUP PLLC
425 Locust Avenue, Suite 201
Charlottesville, Virginia 22902
Telephone:    434.951.2222
Facsimile:    434.951.0666
evan@mayolawgroup.com

*Counsel for Plaintiff*
*Pro-Lift Doors Franchise, LLC*

14